**Milagros ORTIZ, SSN 054–26–8336, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. Civ. 97–2888(JP).**

United States District Court, D. Puerto Rico.

June 25, 1999.

---

Armando Cardona Acaba, PR Legal Services, Inc., San Juan, PR, for plaintiff.

Lilliam E. Mendoza Toro, Assistant U.S. Attorney, Hato Rey, PR, for defendant.

## OPINION AND ORDER

PIERAS, Senior District Judge.

### I. Introduction and Background

Plaintiff Milagros Ortiz ("Ortiz") brings this action under 42 U.S.C. § 405(g), appealing from the final decision of the Secretary of Health and Human Services denying her request for disabled child insurance benefits under 42 U.S.C. § 423(d). Because the Court finds substantial evidence in the record supporting the Secretary's denial and no good cause to remand, the Court hereby **AFFIRMS** the Secretary's decision, and this appeal is hereby **DISMISSED.**

Plaintiff, a 35 year old woman with a sixth/seventh grade education, filed an application for disabled child's insurance benefits on March 18, 1994, based on the account of her father, Julio Ortiz, the wage earner. Ortiz alleges a disability due to a personality disorder, anxiety, and major depression. The application was denied initially and on reconsideration by the Social Security Administration. On June 16, 1995, the Administrative Law Judge ("ALJ") held a hearing to assess Ortiz's case *de novo,* and considered documentary evidence as well as Ortiz's testimony. The ALJ issued his decision on December 27, 1995, finding that Ortiz was not under a disability, and on October 29, 1997, the Appeals Council declined Ortiz's request for review which rendered the ALJ's decision final and subject to review. Plaintiff brought her case before this Court on December 19, 1997, asking the Court to overturn the agency's decision or remand her case for reconsideration on the basis that the ALJ's findings were not supported by substantial evidence and that good cause existed for remand.

### II. Discussion

The issue before the Court is whether the Secretary's decision is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. 405(g); *Richardson v. Perales,* 402 U.S. 389, 399, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nieves v. Secretary of HHS,* No. 91–2273, 1993 WL 126029 at *2 (D.Puerto Rico, Jan. 28, 1993) (Pieras, J.) (citing *Universal Camera v. N.L.R.B.,* 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)). The Secretary is charged with the duty of weighing the evidence and resolving material conflicts with testimony. *See Richardson,* 402 U.S. at 400, 91 S.Ct. 1420; *Gonzalez Garcia v. Secretary of Health and Human Services,* 835 F.2d 1, 3 (1st Cir.1987). Thus, the Court does not make de novo determination, but rather, "must affirm the Secre-

tary's resolution, even if the record arguably could justify a different resolution, so long as it is supported by substantial evidence." *Rodriguez Pagan v. Secretary of Health and Human Services,* 819 F.2d 1, 3 (1st Cir.1987).

Under Section 202(d) of the Social Security Act, 42 U.S.C. § 402(d), the child of an individual entitled to old-age or disability insurance benefits shall be entitled to child's insurance benefits if:

at the time such application was filed claimant was unmarried and (i) either had not attained the age of 18 or was a full-time elementary or secondary school student and had not attained the age of 19, or (ii) is under a disability (as defined in section 423(d) of this title) which began before he attained the age of 22.

42 U.S.C. § 402(d)(1)(B). An individual is considered to be under a disability pursuant to section 423(d):

only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

When considering an application for a period of disability or disability insurance benefits, the Secretary is charged with engaging in a five step analysis. Specifically, the Secretary asks the following five questions:

First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.

Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits his or her physical or mental capacity to perform basic work related functions." If the claimant does not have an impairment of at least this degree of severity, he is automatically considered not disabled.

Third, does the claimant have an impairment equivalent to a specific list of impairments contained in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.

These first three tests are "threshold" tests. If the claimant is working or has the physical or mental capacity to perform "basic work-related functions," he is automatically considered not disabled. If he has an Appendix 1–type impairment, he is automatically considered disabled. In either case, his claim is determined at the "threshold." If, however, his ability to perform basic work-related functions is impaired significantly (test 2) but there is no Appendix 1 impairment (test 3), the SSA goes on to ask the fourth question:

Fourth, does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.

Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so, he is disabled; if not, he is not disabled.

*Goodermote v. Secretary of Health and Human Services,* 690 F.2d 5, 7 (1st Cir. 1982).

In the instant case, the ALJ relied on the fifth factor in deciding that Ortiz was not under a disability prior to the time she turned 22, and he made the following findings:

1. The claimant is a child of the wage earner.

2. The claimant was unmarried at the time the application was filed and is still unmarried.

3. The claimant was dependent on the wage-earner.

4. The claimant obtained age 22 years as of November 21, 1981.

5. The claimant has a history of borderline mental retardation, with at full scale I.Q. of 74, personality disorder, and no other environmental impairment or physical impairment prior to November 21, 1981.

6. The claimant did not have an impairment, by itself or in combination, that met or equaled the criteria indicated in the Listing of Impairments, Appendix 1, Subpart P, Regulations No. 4 through November 20, 1981.

7. Based on the evidence of record, the claimant's subjective complaints are granted no credibility in terms of frequency and intensity prior to November 21, 1981 (20 C.F.R. § 404.1529).

8. The claimant would have had some difficulty performing complex tasks with detailed instructions or activities that require continuous or constant contact with the public, but she would have had no significant limitations performing unskilled work at all levels of exertion prior to November 21, 1981.

9. The claimant has no past relevant work experience in doing any work for pay, but she has been performing domestic tasks on a regular basis for her Aunt, with whom she was living.

10. The claimant is 35 year of age, which is defined as a younger person (20 C.F.R. § 404.1563).

11. The claimant has a 6th grade education, has taken other courses under the auspices of the Vocational Rehabilitation Program and her education is considered marginal (20 C.F.R. § 404.1546).

12. Considering the claimant's age, education, and work experience and residual functional capacity within the framework of Section 204.00, Appendix 2, Subpart P, Regulations No. 4, she should be found "not disabled" at anytime prior to November 21, 1981.

13. The claimant was not under a disability as defined in the Social Security Act, at anytime prior to November 21, 1981, which is prior to the date the claimant became 22 years of age (20 C.F.R. § 404.1520(f)).

Plaintiff argues that the Court should remand her case back to the Secretary for further consideration or reverse the Secretary's decision for the following reasons: (1) the Secretary has mis-characterized Ortiz as "lazy;" (2) the ALJ should have determined that Ortiz was disabled based on the report of Dr. Bustelo; (3) the ALJ made a legal error when he utilized the grids, Section 204.00 Appendix 2, Subpart P, in finding Ortiz "not disabled;" and (4) Plaintiff was unable to obtain medical evidence of her alleged disability prior to 1981 because the records had been destroyed.

■■■ A court can remand a claimant's case for further fact-finding if "good cause" is shown. *See Evangelista v. Secretary of Health and Human Services*, 826 F.2d 136, 141–42 (1st Cir.1987). Nevertheless, remands for "good cause should be few and far between, [so] that a yo-yo effect be avoided—to the end that the process not bog down and unduly impede the timely resolution of social security appeals." *Id.* at 141. Good cause to remand can be shown when the ALJ makes a legal error, such as failing to base his decision on the entire administrative record and evidence as a whole, *see Miller v. Bowen*, 703 F.Supp. 885, 889 (D.Kan.1988), or improperly relying on the Medical–Vocational Guidelines or "Grid" when the claimant has a significant nonexertional impairment, *see Ortiz v. Secretary of Health and Human Services*, 890 F.2d 520 (1st Cir.1989).

## A. The ALJ's Exclusive Reliance on the Medical–Vocational Guidelines

The Court first addresses Plaintiff's contention that the ALJ improperly relied on the Medical–Vocational Guidelines ("Guidelines" or "Grid") in finding her not disabled. Once a claimant has "demonstrated a severe impairment that prohibits return to his previous employment, the Secretary has the burden of proving the existence of other jobs in the national economy that the claimant can perform." *Id.* at 523. The Guidelines allow the Secretary to satisfy this burden at step five of the disability analysis without resorting to the testimony of vocational experts. *Id.* (citing *Sherwin v. Secretary of Health and Human Services,* 685 F.2d 1, 3 (1st Cir. 1982)).

■ The Guidelines, however, are "predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs," and thus, "they may not be fully applicable where the nature of an individual's impairment does not result in such limitations ..." 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(e). Therefore, when a claimant's impairment is nonexertional, the Guidelines are relevant only if the impairment is "found to be substantially consistent with the performance of the full range of unskilled work." *Ortiz,* 890 F.2d at 526. Otherwise, the Secretary should utilize the testimony of a vocational expert. *Id.* at 524.

In the instant case, Plaintiff has no exertional limitations; her claim is based entirely on mental impairments. Therefore, the ALJ's reliance on the Guidelines without hearing vocational testimony can only be upheld if Plaintiff's limitations impose no significant restrictions on the range of work she is exertionally able to perform. The ALJ found that claimant would have trouble performing complex tasks with detailed instructions or activities that required continuous or constant contact with the public, but that she had no other significant exertional or non-ex-

ertional limitations prior to November 22, 1981. Further, based on the record, the ALJ determined that Plaintiff would have no difficulties in remembering and carrying out simple instructions and performing simple, routine, and repetitive tasks as required for domestic work for pay.

■ In rendering his decision, the ALJ also gave little credibility to Plaintiff's subjective complaints relating to the relevant period. The Court notes that the ALJ is free to make demeanor and credibility determinations but they "must be supported by substantial evidence and the ALJ must make specific findings as to the relevant evidence he considered in determining to disbelieve the [claimant]." *Wauzinski v. Shalala,* Civ. No. 91–11905–SF, 1994 WL 725176 at *7 (D.Mass. December 29, 1994) (citing *Da Rosa v. Secretary of Health and Human Services,* 803 F.2d 24, 26 (1st Cir. 1986)). In the case at bar, the ALJ cited to the various reports and evaluations in Ortiz's record in his credibility determination, and the Court finds that his determination was supported by substantial evidence.

The ALJ concluded that Plaintiff's age, education, work experience, and residual functional capacity within the framework of Section 204.00 of the Guidelines, which indicates a maximum sustained work capability limited to heavy or very heavy work, led to a finding of "not disabled." In addition, the ALJ noted that Ortiz retains sufficient capacity and abilities to perform domestic work for pay, as she had been performing domestic tasks on a regular basis for her Aunt.

■ The Court finds that the ALJ's findings regarding Ortiz's limitations and abilities are based on substantial evidence in the record, and further, that they permit reliance on the Guidelines without the utilization of vocational testimony. If, as in the instant case, a claimant has a mental rather than physical impairment, the Secretary must make two separate determinations: (1) whether the claimant can per-

form close to the full range of unskilled work, and (2) whether the claimant can conform to the demands of a work setting, regardless of the skill level involved. *Ortiz* 890 F.2d at 526. The mental capabilities required for unskilled work "include the abilities to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." *Id.* (citing Social Security Ruling 85–15 at 94). Further, regarding the demands of the work setting, "[t]he Secretary has indicated that the mentally impaired 'may cease to function effectively when facing such demands as getting to work regularly . . . . and remaining in the workplace for a full day.' " *Id.* (citing Social Security Ruling 85–5 at 96).

The First Circuit in *Ortiz v. Secretary of Health and Human Services* found that because of the "moderate" restrictions on the claimant's ability to perform unskilled work, the potential occupational base was eroded at least marginally, and possibly more. Nevertheless, the Court held that the Secretary was permitted to rely exclusively on the Grid without resorting to vocational testimony "because the claimant's capacity for the full range of light work was not significantly compromised." *Id.* at 527. The *Ortiz* Court, however, advised ALJ's to regularly take vocational evidence so as to avoid unnecessary remands for additional fact finding, noting that the case was an "unusual instance where reliance on the Grid is permissible despite the existence of a significant nonexertional limitation." *Id.* at 528.

The Court believes that in the instant case, the ALJ should have erred on the side of taking vocational testimony because Plaintiff's impairment was entirely nonexertional. The facts of Plaintiff's situation, however, permit the ALJ's exclusive reliance on the Guidelines. The evidence in Plaintiff's record supports the ALJ's conclusion that her impairments did not significantly restrict her ability to perform a wide range of unskilled work. The record contains the following reports and evaluations: (1) Dr. Guillermo Bustelo's psychiatric evaluation performed on October 13, 1989; (2) a July 7, 1989 psychological report performed by Dr. Hernández Cuesta; (3) medical examination record from the Vocational Rehabilitation Program dated June 23, 1989; (4) reports of the treatment/therapy of Ortiz by Dr. Hector Rodríguez; and (5) a medical certificate dated August 8, 1994 by Dr. José R. Fumero–Vidal stating that claimant was seen by him in 1981 through 1982 and 1983.

While the case is perhaps not as open and shut as the ALJ's decision suggests, his conclusion that Plaintiff is able to perform the full range of unskilled work is supported by the record. The medical exam made in relation to Plaintiff's vocational evaluation states that claimant was suffering from a "temporary" emotional condition. Further, this evaluation indicates that her disability could be reduced by treatment and that there were no limitations or restrictions as to work capacity. In addition, the psychological report performed by Dr. Hernández Cuesta states that Plaintiff functioned at a borderline level, that she can read and write, and that her intellectual ability is suited for vocational studies, although he cautioned that the jobs must be "eminently practical" to ensure her vocational objective.

Other evaluations are less optimistic about Plaintiff's ability to engage in a full range of work. Dr. Bustelo's report states that Plaintiff's "dysfunctional, unstable, impulsive, disorganized style will test the patient and tolerance to frustration of everyone who relates with her," although his report suggests that medication could allow her to act in a less hostile and aggressive way. As noted by the ALJ, in addition to the conclusions reached above, Dr. Bustelo found that Ortiz had no tics, mannerisms or verbal eccentricities, no delu-

sions or hallucinations, nor did she reveal any memory problems. Finally, the 1994 medical certification discusses Ortiz's treatment in 1981 through 1982 and 1983 for a serious impulse control problem complicated by major depressive episodes and a personality disorder.[1]

Contrary to Plaintiff's assertion, the Court finds that the ALJ adequately took into account the record as a whole in finding her not disabled, including Dr. Bustelo's testimony. *c.f. Guyton v. Kenneth S. Apfel, Commissioner of Social Security,* 20 F.Supp.2d 156, 165 (D.Mass.1998) (case remanded because ALJ did not conduct a mental impairment assessment nor take into consideration the findings of a psychological evaluation and Social Security Administration's psychiatric review indicating severe mental impairment based on mental retardation and personality disorder.) Although the ALJ did not specifically address Dr. Bustelo's findings about Ortiz's "dysfunctional style," in examining the record in its entirety, the Court finds that Plaintiff's impairment would only marginally reduce her occupational base.

The evidence further supports the ALJ's assessment that Plaintiff has the mental capabilities discussed by the *Ortiz* Court as required for the performance unskilled work. The Court believes that the 1994 medical certification and Dr. Bustelo's testimony support a marginal reduction in Plaintiff's occupational base. Nevertheless, this reduction is not significant, and thus, the ALJ was permitted to rely solely on the Guidelines in his determination. The Court points out that, as stated by the First Circuit in *Ortiz*, the taking of vocational testimony in this case would have been preferable; however, this case falls within the narrow exception described in *Ortiz*, and need not be remanded for the taking of vocational testimony. Therefore, the Court **AFFIRMS** the Secretary's decision to rely on the Guidelines in his determination.

## B. The Secretary's Characterization of Plaintiff and Lack of Medical Records

The Court next addresses Plaintiff's contention that the Secretary has mis-characterized her as "lazy," and that this misconception impeded a fair evaluation of her case. The basis for Plaintiff's allegation is that the Secretary asserts in his brief that "[i]t appears the problem was not the capacity to work, but the unwillingness." (Def.'s brief at 15). Plaintiff argues that the Secretary's conclusion is based on an inaccurate interpretation and translation of the record. Although the Secretary's brief does characterize Ortiz's problem as an "unwillingness to work," this is not discussed in the ALJ's opinion. Rather, it appears that the Secretary concluded from the record and ALJ's determination that although Ortiz is capable of doing unskilled work, she is unwilling or uninterested in doing so. It is the Secretary's duty to weigh the evidence and resolve conflicting testimony. *See Richardson,* 402 U.S. at 400, 91 S.Ct. 1420. The Court does not find support for Plaintiff's contention that the Secretary unfairly evaluated her case in either the record or in the ALJ's decision.

Plaintiff further asserts that the Secretary did not adequately consider the medical and psychiatric evidence in her record because the relevant period of her disability was prior to November 21, 1981, and, through no fault of her own, her records from the time period prior to this date were destroyed. Under the Regulations, a claimant has the burden of providing medical evidence of her impairment and its severity during the relevant time period. *See* 20 C.F.R. § 404.1512(c). The Social Security Administration, however, will assist the claimant and develop a complete medical history for the period of 12 months prior to the application or for any other relevant period. *See* 20 C.F.R.

---

1. The Court notes that the therapy notes included in the record were not discussed by the ALJ, and the Court did not find them helpful in assessing Plaintiff's impairment.

**104**

§ 404.1512(d). In the instant case, Plaintiff is not claiming that the Social Security Administration did not assist her in compiling a medical record. Rather, Plaintiff seems to suggest that since the relevant medical records were destroyed, the ALJ did not adequately consider the other, more recent evidence in her file.

After examining the record, the Court finds that the ALJ did exactly what Plaintiff asks—he considered all the evaluations and reports that were made about Ortiz regardless of their time frame. As discussed above in the context of the ALJ's reliance on the Guidelines, the ALJ considered and cited the reports and evaluations of all doctors and psychologists that evaluated Plaintiff. The ALJ did not base his finding of no disability on a lack of evidence prior to 1981, but rather, in his assessment of her pre–1981 impairments, he considered the evaluations of Plaintiff's condition that occurred after the relevant period of disability. Further, the ALJ made a specific finding that Plaintiff has a history of borderline retardation and personality disorder prior to November 21, 1981. Thus, Plaintiff's contention is without merit and the Court finds the ALJ's assessment of the evidence to be supported by the record.

### III. Conclusion

The Court finds that the ALJ did not make a legal error when he relied exclusively on the Guidelines to determine that Plaintiff was not disabled. Further, the ALJ's determination was supported by substantial evidence in the record. The lack of records prior to November 20, 1981 as well as Secretary's characterization in his brief as unwillingness to do work did not undercut the ALJ's decision. The Secretary's decision is hereby **AFFIRMED** and the appeal is **DENIED.**

**SO ORDERED.**