**Miguel Alvarez COLLADO, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

No. Civ. 98–1416 JP.

United States District Court, D. Puerto Rico.

Aug. 5, 1999.

Salvador Medina de la Cruz, Río Piedras, P.R., for plaintiff.

Lillliam E. Mendoza Toro, Assistant United States Attorney, District of Puerto Rico, Civil Division, Hato Rey, P.R., for defendant.

## OPINION AND ORDER

PIERAS, Senior District Judge.

### I. Introduction and Background

Plaintiff Miguel Alvarez Collado ("Alvarez") brings this action under 42 U.S.C. § 405(g), appealing from the final decision of the Secretary of Health and Human Services denying his request for Social Security disability benefits under 42 U.S.C. § 423. Upon a thorough review of the record, the Court concludes that the Secretary's finding that Plaintiff is not disabled is not supported by substantial evidence in the record. The decision of the Secretary is therefore **REMANDED** for proceedings consistent with this Opinion.

Plaintiff filed an application for disability insurance benefits on November 14, 1994, alleging an inability to work since April 18, 1994. The application was denied initially and on reconsideration by the Social Security Administration. A waiver for a hearing appearance was requested by Plaintiff's counsel on December 8, 1995, and approved. On May 1, 1996, the Administrative Law Judge ("ALJ") reviewed the case based solely on the evidence in the record. The ALJ found that Plaintiff was not disabled, and the ALJ's decision was approved by the Appeals Council on February 23, 1998, rendering it the final deci-

sion of the Commissioner of Social Security and subject to judicial review.

## II. Discussion

The issue before the Court is whether the ALJ utilized the proper legal standards in determining that Plaintiff was not disabled, and whether the decision is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 399, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Nguyen v. Chater,* 172 F.3d 31, 35 (1st Cir. 1999). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nieves v. Secretary of Health and Human Services,* No. 91–2273, 1993 WL 126029 at *2 (D.Puerto Rico, Jan. 28, 1993) (Pieras, J.) (citing *Universal Camera v. N.L.R.B.,* 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)).

The Secretary is charged with the duty of weighing the evidence and resolving material conflicts with testimony. *See Richardson,* 402 U.S. at 400, 91 S.Ct. 1420; *González García v. Secretary of Health and Human Services,* 835 F.2d 1, 3 (1st Cir.1987). Thus, the Court does not make a de novo determination, but rather, "must affirm the Secretary's resolution, even if the record arguably could justify a different resolution, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Secretary of Health and Human Services,* 819 F.2d 1, 3 (1st Cir. 1987). Nevertheless, an ALJ's findings of fact "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen,* 172 F.3d at 35.

To establish entitlement to disability benefits, a plaintiff must prove that he has become disabled within the meaning of the Social Security Act ("the Act"). *See Deblois v. Secretary of Health and Human Services,* 686 F.2d 76, 79 (1st Cir.1982). A plaintiff is considered disabled within the meaning of the Act if he is unable to perform any substantial gainful work be-

cause of a medical condition which can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 416(I)(1). The impairment must be so severe as to prevent the plaintiff from working not only in his usual occupation, but in any other substantial gainful work in the national economy considering his age, education, training, and work experience. 42 U.S.C. § 423(d)(2)(A).

When considering an application for disability insurance benefits, the Secretary is charged with engaging in a five step analysis, to wit:

First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.

Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits his or her physical or mental capacity to perform basic work related functions." If the claimant does not have an impairment of at least this degree of severity, he is automatically considered not disabled.

Third, does the claimant have an impairment equivalent to a specific list of impairments contained in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.

These first three tests are "threshold" tests. If the claimant is working or has the physical or mental capacity to perform "basic work-related functions," he is automatically considered not disabled. If he has an Appendix 1–type impairment, he is automatically considered disabled. In either case, his claim is determined at the "threshold." If, however, his ability to perform basic work-related functions is impaired significantly (test 2) but there is no Appendix 1 impairment (test 3), the SSA goes on to ask the fourth question:

Fourth, does the claimant's impairment prevent him from performing work of

the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.

Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so, he is disabled; if not, he is not disabled.

*Goodermote v. Secretary of Health and Human Services,* 690 F.2d 5, 7 (1st Cir. 1982).

In the instant case, the ALJ relied on the fifth factor and used the Medical–Vocational Guidelines ("Guidelines" or "Grid") to determine that Alvarez had the capacity to perform light work. Plaintiff argues that the Court should remand his case back to the Secretary for further consideration or reverse the Secretary's decision for the following reasons: (1) the medical evidence in the record shows that Alvarez's pain condition was credible and should have been taken into consideration as a significant non-exertional impairment; (2) the ALJ should have utilized the testimony of a vocational expert instead of relying on the Guidelines because of Alvarez's non-exertional impairments; (3) the ALJ did not consider the impact of Alvarez's visual limitations on his occupational base in applying the Guidelines, and; (4) the Secretary has failed to show that there are significant jobs in the national economy which Alvarez could perform.

### A. Plaintiff's Medical History

Plaintiff alleges a disability as of April 18, 1994, due to back and nervous conditions, anxiety and trembling, and poor vision. (Tr. 32, 72.) At the time of his application for benefits, Alvarez was 43 years old, had a high school education, could not and still cannot communicate in English, and had past relevant work experience as a maintenance man, electrician's helper and an agricultural laborer. (Tr. 76, 80.)

Based on the transcript, Alvarez was treated by the Puerto Rico State Insurance Fund on April 19, 1994, after injuring his back. (Tr. 143–148.) He was diagnosed with a tenderness and stiffness in the lumbosacral area, and a CT scan revealed a small central right disc herniation at L5–S1 with some calcification likely associated with osteophite. (Tr. 143.) Dr. Héctor Nazario recommended conservative treatment including rest, analgesics, and physical therapy. (Tr. 144.) In July 1994, Alvarez still complained of pain, and Dr. Nazario recommended continued physical therapy as well as diet modifications. (Tr. 137.) Notes from the physical therapy clinic indicate his condition was improving, although he experienced pain during exercise. (Tr. 133.)

The record shows that Alvarez was examined on December 26, 1994, and was diagnosed with disco-genic disease and depression. (Tr. 129.) During the exam, Alvarez referred to lower back pain that sometimes radiated to his right leg. On January 31, 1995, Alvarez reported continuing right lower pain radiating down his legs. There was tenderness in the lumbar spine, and he had a decreased range of motion at both flexion and extension. At this time, Alvarez was diagnosed with disco-genic disease, sexual dysfunction, and depression. (Tr. 128.)

Dr. Ramón del Prado Escobar, a neurologist, saw Alvarez in May and July 1994. (Tr. 151–54.) Dr. del Prado Escobar's reports both mention lower back pain that sometimes radiated to the lower left leg, and he stated that Alvarez should avoid lifting, carrying, pushing, and pulling heavy objects. Alvarez's file also includes a report by optometrist Dr. Magaly Figueroa Sepulveda, dated March 5, 1995, in which the doctor noted that he had examined Alvarez on March 17, 1993. (Tr. 155.) The vision in Alvarez's right eye was $20/30$, and he had hyperopic astigmatism. There was myopia in Alvarez's left eye and no visual activity even with correction. The left eye refraction could not be corrected with surgery. Dr. Figueroa's opinion was that Alvarez could be involved in activities

that do not require binocular vision or which will not harm his right eye. (Tr. 158.)

Dr. Ricardo Diez Delgado performed a psychiatric evaluation on March 14, 1995, in which he diagnosed Alvarez with depressive disorder not otherwise specified, disco-genic disease (by history), and occupational problems. There was no evidence, however, of major depression, and Alvarez was able to improve his functional level with adequate treatment. (Tr. 163.)

A neurological evaluation was conducted by Dr. Winston Ortiz on March 20, 1995. (Tr. 164–69.) Dr. Ortiz noted Alvarez's continued lower back pain resulting from his initial injury. Dr. Ortiz performed various tests, finding—among other things—that Alvarez could bend, stoop, kneel, squat, and that his gait was normal. Alvarez's functional capacity was limited in that he could not perform jobs requiring heavy lifting and carrying. (Tr. 165.)

A residual functional capacity ("RFC") assessment was completed by internist Dr. G. Fragoso Ledesma on March 31, 1995. (Tr. 48–66.) Dr. Fragoso Ledesma found that Plaintiff could frequently lift 10 pounds, occasionally lift 20, could sit/stand and walk about six hours a day, and had unlimited ability to push/pull. He also found that despite Alvarez's lumbosacral condition, he could frequently balance and kneel and could occasionally climb, stoop, crouch, and crawl. (Tr. 50.) Dr. Fragoso Ledesma also found that Alvarez had visual limitations in near acuity, far acuity, depth perception, accommodation, and field of vision and color limitations in the left eye. As a result, Alvarez should avoid jobs requiring good binocular vision and the operation of motor vehicles. (Tr. 51–52.)

Dr. Zulma McDougall completed a Psychiatric Review Technique form on April 5, 1995, in which she determined that Alvarez did not have a severe mental impairment, and on June 22, 1995, DDS psychological consultant Dr. Orlando Reboredo agreed with Dr. McDougall's assessment. (Tr. 39–47, 123.)

Plaintiff's treating physician since April 19, 1994, Dr. Nazario, completed a report on November 14, 1995 about his condition. (Tr. 172–82.). Plaintiff was treated by Dr. Nazario every other month for disc herniation at the lumbar fifth vertebrae. Plaintiff complained of moderately severe lower back pain at least three to four times a week which was precipitated by flexion or hyperextension of the spine or weight lifting. (Tr. 173.) In addition, Plaintiff could not tolerate prolonged sitting for more than one hour, could not bend, climb, carry, or lift more than 10 pounds occasionally, and his coordination and kneeling were affected by imbalance, back discomfort, and pain. (Tr. 175.) Plaintiff would have to take rest periods two to three times a day for 30 to 90 minutes. (Tr. 176.)

A mental RFC was completed by Dr. Americo Oms on December 1, 1995, who had first treated Alvarez on February 14, 1995. (Tr. 177–182.) Dr. Oms found Plaintiff markedly limited in his ability to remember work-like schedules, to understand, remember, and carry out detailed as well as simple instructions, to sustain an ordinary routine without special instructions, and to make simple work-related decisions. (Tr. 179.) He also found Plaintiff extremely limited in the following abilities: to maintain attention and concentration; to perform activities within a schedule and be punctual; to work in coordination or proximity to others; to complete a normal workday and work-week without interruptions; to interact appropriately with the public; to accept instructions and respond appropriately to changes and criticism; to get along with co-workers; to maintain appropriate behavior; to be aware of normal hazards, and; to set realistic goals. In Dr. Oms' opinion, Alvarez was very limited in his ability to perform gainful employment and was "permanently disabled." (Tr. 181–182.)

In a later report, Dr. Oms reiterated some of his earlier findings and further found Alvarez extremely limited in practically all categories. He noted that Alvarez has a "severe psychiatric condition that has turned chronic," and despite his treatment, Alvarez had not shown any significant improvement. Because of the progress and severity of his condition, Dr. Oms again determined that Alvarez could not engage in any gainful activity and is totally and permanently disabled. (Tr. 210.)

## B. ALJ's Consideration of Plaintiff's Subjective Complaints of Pain

The ALJ determined that during the relevant period, April 19, 1994 through May 1, 1996, Plaintiff had a severe impairment from a combination of lumbar and medical conditions with left eye vision loss, but that he did not have an impairment or combination of impairments which met or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. The ALJ stated that there was "no evidence of any severe pain," and noted that the pain alleged by Alvarez was to be evaluated in light of various social security rulings and regulations as well as the First Circuit's decision in *Avery v. Secretary of Health and Human Services*, 797 F.2d 19 (1st Cir.1986).

In discrediting Plaintiff's subjective complaints of pain, the ALJ stated that there was no evidence of "any frequent, intense or prolonged lumbar pain radiating to the extremities." (Tr. at 20.) Further, the ALJ noted that Alvarez had engaged in heavy exertion on a sustained basis through 1994 despite the fact that he was treated for a lumbar condition as early as 1987. In addition, the ALJ noted that Alvarez had full range of motion in the neck, extremities, and major joints and only mild to moderate limitation of motion in the lumbar spine. He also took factors into consideration including the fact that Alvarez could lift a maximum of 20 pounds, that his medical conditions have remained well controlled, that he does not have any

side effects from his prescribed medication, and that his mild depression and left eye vision loss do not preclude unskilled, simple work on a routine basis.

The Court first examines the ALJ's decision to discredit Alvarez's subjective claims of pain. The First Circuit in *Avery v. Secretary of Health and Human Services*, 797 F.2d 19, 28 (1st Cir.1986) recognized that "[t]here are situations in which an individual's alleged or reported symptoms, such as pain, suggest the possibility of a greater restriction of the individual's ability to function that can be demonstrated by objective medical findings alone." The Court stated that "it is essential to investigate all avenues presented that relate to subjective complaints, including the claimant's prior work record and information and observations by treating and examining physicians and third parties." *Avery*, 797 F.2d at 28.

■ Therefore, an ALJ should examine the following factors when assessing subjective complaints of pain: (1) the nature, location, onset, duration, frequency, radiation, and intensity of pain; (2) any precipitating or aggravating factors; (3) the type, dosage, effectiveness, and adverse side effects of any pain medication; (4) any treatment, other than medication, for the relief of pain; (5) any functional restrictions; and (6) the claimant's daily activities. *Id.* at 29. The *Avery* Court noted that pain can result in a greater severity of impairment than is demonstrated by objective physical manifestations, and thus, the ALJ must consider "a full description of the individual's prior work record, daily activities and any additional statements from the claimant, his or her treating physician or other third party relative to the alleged pain." *Id.* at 29–30.

■ In a later case, the First Circuit again dealt with the findings that an ALJ must make when determining whether to credit subjective assertions of pain, stating that they "must be supported by substantial evidence and the ALJ must make spe-

cific findings as to the relevant evidence he considered in determining to disbelieve the [claimant]." *Da Rosa v. Secretary of Health and Human Services,* 803 F.2d 24, 26 (1st Cir.1986). In the instant case, the ALJ stated that there was "no evidence of severe pain," but he did not engage in the analysis described in *Avery.* Although the ALJ discussed some of the various diagnoses and medical findings, the ALJ took no testimony, described none of Alvarez's daily activities, nor indicated the relevance of Alvarez's descriptions of pain as detailed above, which existed in every medical report or examination in the record. (Tr. 75, 91, 133, 144, 145, 146, 151, 172, 175.) In addition, Alvarez himself describes his pain as "unbearable" or "severe," and the ALJ does not discuss these assertions, nor why he has chosen to discredit them. (Tr. 107, 110, 121.)

The Court notes that Alvarez waived his right to a hearing, and thus, there was no testimony by Alvarez as to his condition. Neither party discusses the implications of this fact on the Court's substantial evidence analysis in the context of Plaintiff's arguments. The Court, however, finds that even though Alvarez waived a hearing, the ALJ still had a duty to adequately develop the record. *See Evangelista v. Secretary of Health and Human Services,* 826 F.2d 136, (1st Cir.1987) (because social security proceedings are not strictly adversarial "the Secretary bear[s] a responsibility for adequate development of the record.") In the instant case, in order to fully develop the record, the ALJ should have explored Alvarez's claims of pain and detailed his findings, which may have required him to call witnesses or otherwise supplement the existing record. 20 C.F.R. § 404.950(b) ("Even if all of the parties waive their right to appear at a hearing, the administrative law judge may notify them of a time and place for an oral hearing, if he or she believes that a personal appearance and testimony by you or any other party is necessary to decide the case.")

Since the ALJ's decision is bereft of an analysis of Alvarez's documented claims of pain or other findings required by *Avery,* the Court remands the instant case for a fuller development of the record. *See Kane v. Heckler,* 731 F.2d 1216, (5th Cir. 1984) (when ALJ fails to develop a full record "he does not have before him sufficient facts on which to make an informed decision. Consequently, his decision is not supported by substantial evidence."); *Rohrberg v. Apfel, Acting Commissioner, Social Security Administration,* 26 F.Supp.2d 303, 308 (D.Mass.1998) (case remanded because ALJ erred by not questioning claimant about "the nature, location, onset, duration, frequency, radiation, and intensity or her pain," about the precipitating or aggravating factors of pain, medications, or functional restrictions, nor did the ALJ obtain detailed descriptions of daily activities).

Further development of the record on remand by the ALJ may include a closer examination of the medical records relating to Plaintiff's allegations of pain, Alvarez's testimony about his pain and daily activities, and the testimony of Alvarez's wife, who helps Alvarez when his pain worsens, (Tr. 107, 110), and who herself stated that "most of the time" he complains of back pain (Tr. 160).

## C. The ALJ's Exclusive Reliance on the Medical–Vocational Guidelines

The Court next addresses Plaintiff's contention that the ALJ improperly relied on the Medical–Vocational Guidelines. Once a claimant has "demonstrated a severe impairment that prohibits return to his previous employment, the Secretary has the burden of proving the existence of other jobs in the national economy that the claimant can perform." *Ortiz v. Secretary of Health and Human Services,* 890 F.2d 520, 523 (1st Cir.1989). The Guidelines allow the Secretary to satisfy this burden at step five of the disability analysis without resorting to the testimony of vocational experts. *Id.* (citing *Sherwin v. Secretary*

*of Health and Human Services,* 685 F.2d 1, 3 (1st Cir.1982)).

■ The Guidelines, however, are "predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs," and thus, "they may not be fully applicable where the nature of an individual's impairment does not result in such limitations ..." 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(e). Therefore, when a claimant's impairment is nonexertional, the Guidelines are relevant only if the impairment is "found to be substantially consistent with the performance of the full range of unskilled work." *Ortiz,* 890 F.2d at 526. Otherwise, the Secretary should utilize the testimony of a vocational expert. *Id.* at 524.

The First Circuit in *Ortiz* found that because of the "moderate" restrictions on the claimant's ability to perform unskilled work, the potential occupational base was eroded at least marginally, and possibly more. Nevertheless, the Court held that the Secretary was permitted to rely exclusively on the Grid without resorting to vocational testimony "because the claimant's capacity for the full range of light work was not significantly compromised." *Id.* at 527. The *Ortiz* Court, however, advised ALJ's to regularly take vocational evidence so as to avoid unnecessary remands for additional fact finding, noting that the case was an "unusual instance where reliance on the Grid is permissible despite the existence of a significant nonexertional limitation." *Id.* at 528; *see also Ortiz v. Kenneth S. Apfel,* 55 F.Supp.2d 96, 102–103 (D.Puerto Rico 1999) (failure to take vocational testimony upheld based on *Ortiz* exception).

■ In the instant case, Plaintiff first claims that the ALJ should not have relied on the Grid because of his nonexertional pain limitations, and second, that the ALJ did not adequately take into account his vision problems when utilizing the Grid. Pain can be a nonexertional factor, consid-

ered in combination with exertional limitations, although it can also serve as a separate and independent ground for disability. *Da Rosa,* 803 F.2d at 26 (citing *Gagnon v. Secretary of Health and Human Services,* 666 F.2d 662, 666 n. 8 (1st Cir.1981).

■ The First Circuit has held that "pain can constitute a significant non-exertional impairment which precludes naked application of the Grid and requires use of a vocational expert." *Nguyen,* 172 F.3d at 36 (citations omitted). Thus, on remand, the Secretary should not only further evaluate Alvarez's claims of pain as discussed above, but should also utilize, if he finds the pain to be significant, the testimony of a vocational expert to help determine the impact of Plaintiff's nonexertional limitations on his occupational base.

■ The Court further finds that the testimony of a vocational expert should be utilized to help assess the impact of Plaintiff's vision problems on the range of jobs he would be able to perform. Although the ALJ mentions Alvarez's vision problems, he fails to discuss their impact on Alvarez's ability to perform skilled and semi-skilled work aside from stating that he could not perform jobs "requiring normal bilateral vision." (Tr. 22.) Since Alvarez's vision problems are a significant nonexertional limitation which could potentially affect the range of skilled or semi-skilled work he can perform, the exclusive use of the Grid is improper.

Finally, Plaintiff also claims that the Secretary did not meet its burden to show that there are jobs in the national economy that Alvarez could perform. The Court believes that when the ALJ further develops the record on remand, he will either come to a different conclusion about Plaintiff's disability, or he will be better able to assess and indicate which jobs Alvarez could perform based on all relevant factors, thus fulfilling his burden at this stage of the disability analysis.

### III. Conclusion

The Court finds that the Secretary's decision was not based on substantial evidence in the record, and thus, the instant case is hereby **REMANDED** for further proceedings consistent with this opinion.

**SO ORDERED.**